**CARLSON LYNCH SWEET
KILPELA & CARPENTER, LLP**
Todd D Carpenter (CA 234464)
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone: 619-756-6994
Facsimile: 619-756-6991
tcarpenter@carlsonlynch.com

**MILSTEIN ADELMAN LLP**
Gillian L. Wade, (CA 299124)
Allison R. Willett, (CA 238430)
2800 Donald Douglas Loop North
Santa Monica, CA 90405
Telephone: 888-835-8055
Facsimile: 310-396-9635
gwade@milsteinadelman.com
awillett@milsteinadelman.com

*Attorneys for Plaintiffs*
[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAIGE PETKEVICIUS, PETER RIPLEY on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>        v.<br><br>NBTY, Inc., a Delaware Corporation; NATURE'S BOUNTY, INC., a New York Corporation; REXALL SUNDOWN, INC., a Florida Corporation,<br><br>                Defendants. | Case No.  '17 CV 1152 JLS  BGS<br><br>CLASS ACTION COMPLAINT FOR:<br><br>1.  VIOLATION OF UNFAIR COMPETITION LAW, Business and Professions Code § 17200, *et seq.*;<br>2.  VIOLATION OF UNFAIR COMPETITION LAW, Business and Professions Code § 17200, *et seq.*;<br>3.  VIOLATION OF UNFAIR COMPETITION LAW, Business and Professions Code § 17200, *et* |

*seq.*;

4. FALSE AND MISLEADING ADVERTISING, Business and Professions Code § 17500, *et seq.*;
5. VIOLATION OF CALIFORNIA LEGAL REMEDIES ACT, Civil Code § 1750, *et seq.*;
6. BREACH OF CALIFORNIA EXPRESS WARRANTY;
7. VIOLATION OF NEW YORK GENERAL BUSINESS LAW, N.Y. Gen. Bus. Law § 349;
8. VIOLATION OF NEW YORK GENERAL BUSINESS LAW, N.Y. Gen. Bus. Law § 350; and
9. BREACH OF CALIFORNIA EXPRESS WARRANTY.

**DEMAND FOR JURY TRIAL**

Plaintiff Paige Petkevicius and Plaintiff Peter Ripley, individually and on behalf of all others similarly situated (hereinafter collectively "Plaintiffs" or the "Class"), bring this consumer class action against NBTY, Inc. ("NBTY"), Nature's Bounty, Inc. ("Nature's Bounty"), and Rexall Sundown, Inc. ("Sundown") (hereinafter collectively "Defendants"), for unlawful, unfair, and deceptive business practices in violation of California Business & Professions Code Section 17200 *et seq.*, California Business & Professions Code Section 17500 *et seq.*, California Civil Code Section 1750 *et seq.*, Breach of California Express Warranty, violation of New York's General Business Law Sections 349 & 3505, and Breach of New York's Express Warranty and allege as follows:

## NATURE OF THE ACTION

1.    Defendants distribute, market and sell:

    a.    "Nature's Bounty Double Strength Standardized Extract Ginkgo Biloba 120 mg" (100 Capsules);

    b.    "Nature's Bounty Standardized Strength Ginkgo Biloba 60 mg" (200 Capsules);

    c.    "Nature's Bounty Standardized Strength Ginkgo Biloba 60 mg" (60 Tablets); and

    d.    "Nature's Bounty Whole Herb Ginkgo Biloba 400 mg plus 60 mg Standardized Extract" (120 Tablets)

(collectively, "Nature's Bounty Products").

2.    Additionally, Defendants distribute, market and sell:

    a.    "Sundown Naturals Ginkgo Biloba 60 mg" (200 Tablets);

    b.    "Sundown Naturals Ginkgo Biloba 60 mg" (120 Tablets); and

    c.    "Sundown Naturals Ginkgo Biloba 60 mg" (100 Tablets).

(collectively, "Sundown Naturals Products").

3.    Defendants represent that the primary active ingredient in the Nature's Bounty and Sundown Naturals Products (collectively, the "Ginkgo biloba Products") is Ginkgo biloba extract.

4.    Defendants advertise and market the Ginkgo biloba Product and their active ingredients as purportedly providing a variety of health benefits and relief from various symptoms. Specifically, through an extensive and uniform nationwide advertising campaign, Defendants make the following representations and warranties on the Ginkgo biloba Products' labels:

- "Supports Healthy Brain Function and Circulation"
- "Supports Healthy Brain Function"
- "Promotes Healthy Brain Function & Circulation"

- "helps support memory, especially occasional mild memory problems associated with aging"
- "Clinically Studied Dosage for Brain Function"
- "Helps Support Mental Alertness"
- ". . . Ginkgo helps improve memory, *especially occasional mild memory problems associated with aging*"
- "Promotes Healthy Brain Function" and
- "Helps Support Mental Alertness"

*See* Exs. A-G.

5.      However, to the detriment of consumers, all available, reliable, scientific evidence demonstrates that the Ginkgo biloba Products have no efficacy at all, are ineffective in the improvement of cognitive health, and provide no benefits related to increasing the memory and healthy functioning of consumers' brains. Numerous scientifically valid studies, performed by independent researchers and published in reputable medical journals, have been conducted on the Ginkgo biloba Products, and they have universally demonstrated that the supplement has absolutely no scientific value in the improvement of brain function, treatment of memory problems or cognitive health.

6.      Defendants convey their uniform, deceptive message to consumers through a variety of media including their website and online promotional materials, and at the point of purchase, on the Ginkgo biloba Products' packaging/labeling, where it cannot be missed by consumers. The only reason a consumer would purchase the Ginkgo biloba Products is to obtain the advertised cognitive health benefits and brain function support, which the Ginkgo biloba Products do not provide.

7.      As a result of Defendants' deceptive advertising and false claims regarding the efficacy of the Ginkgo biloba Products, Plaintiffs and the proposed

class have purchased products which do not perform as represented, and they have been harmed in the amount they paid for the Ginkgo biloba Products.

8.      Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who have purchased Defendants' Ginkgo biloba Products, to halt the dissemination of this false, misleading and deceptive advertising message; to correct the false and misleading perception Defendants have created and fostered in the minds of consumers; and to obtain redress for those who have purchased Defendants' Ginkgo biloba Products. Based on violations of California and New York state laws and Defendants' breaches of express warranties, Plaintiffs seek monetary relief for consumers who purchased the Ginkgo biloba Products.

## JURISDICTION

9.      This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff Petkevicius is a citizen of the State of California, Plaintiff Ripley is a citizen of the State of New York, and Defendants are citizens of the States of Delaware, New York, and Florida; and (3) the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

10.      This Court has personal jurisdiction over Defendants because Defendants conduct business in California. Defendants have marketed, promoted, distributed, and sold the Ginkgo biloba Products in California, and Defendants have sufficient minimum contacts with this State and/or have sufficiently availed themselves of the markets in this State through their promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible.

## VENUE

11.      Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims

occurred while Plaintiff Petkevicius resided in this judicial district.

## PARTIES

12.    Plaintiff Paige Petkevicius is, and at all times relevant hereto was, an individual residing in San Diego County, California. Plaintiff Petkevicius purchased Nature's Bounty Products and Sundown Naturals Products in or about March 2014 at the CVS pharmacy located at 8813 Via La Jolla Drive, La Jolla, California 92037. In doing so, Plaintiff Petkevicius relied upon Defendants' advertising and other promotional materials, including information on the Products' packaging, containing the misrepresentations alleged herein, including the claims that the Ginkgo biloba Products will promote, improve or support improved memory and brain functioning. Plaintiff Petkevicius consumed the Ginkgo biloba Products as directed by Defendants and did not receive any of the advertised benefits associated with the Ginkgo biloba Products. She would not have purchased the Ginkgo Biloba Products had she known Defendants' representations were false.

13.    Plaintiff Peter Ripley is, and at all times relevant hereto was, an individual residing in Brooklyn, New York. Plaintiff Ripley most recently purchased Nature's Bounty Products in or about early May of 2017 from Amazon.com. In doing so, Plaintiff Ripley relied upon advertising and other promotional materials, including information on the Nature's Bounty Products' packaging, containing the misrepresentations alleged herein, including the claims the Nature's Bounty Products will promote, improve or support improved memory and brain functioning. Plaintiff Ripley consumed the Nature's Bounty Products as directed by Defendants and did not receive any of the advertised benefits associated with the Nature's Bounty Products. He would not have purchased the Nature's Bounty Products had he known Defendants' representations were false.

14.    Defendant NBTY, Inc. is a corporation organized under the laws of Delaware with its principal place of business at 2100 Smithtown Avenue,

Ronkonkoma, New York. NBTY  manufactures vitamins and dietary supplements, including the Gingko Biloba Products, and markets its products under various name brands. NBTY created and/or authorized the false, misleading and deceptive advertisements and packaging of the Gingko Biloba Products. NBTY, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the States of California and New York.

15.    Defendant Nature's Bounty, Inc. ("Nature's Bounty") is a corporation organized under the laws of New York with its principal place of business at 2100 Smithtown Avenue, Ronkonkoma, New York. Nature's Bounty manufactures the Nature's Bounty Products. Nature's Bounty created and/or authorized the false, misleading and deceptive advertisements and packaging of the Nature's Bounty Products. Nature's Bounty, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the States of California and New York. On information and belief, Nature's Bounty is wholly owned by Defendant NBTY, Inc.

16.    Defendant Rexall Sundown, Inc. ("Sundown") is a corporation organized under the laws of Florida with its principal place of business at 2100 Smithtown Avenue, Ronkonkoma, New York. Sundown manufactures the Sundown Naturals Products. Sundown created and/or authorized the false, misleading and deceptive advertisements and packaging of the Sundown Naturals Products. Sundown, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the States of California and New York. On information and belief, Sundown is wholly owned by Defendant NBTY, Inc.

17.    Plaintiffs are informed and believe, and thus allege, that at all times herein mentioned, each of the Defendants was the agent, employee, representative, partner, joint venturer, and/or alter ego of the other Defendants and, in doing the

things alleged herein, was acting within the course and scope of such agency, employment, or representation, on behalf of such partnership or joint venture, and/or as such alter ego, with the authority, permission, consent, and/or ratification of the other Defendants.

## SUBSTANTIVE ALLEGATIONS

### A.    Background

18.    Few things are more unnerving than memory lapses. According to a survey by the Marist Institute for Public Opinion, Alzheimer's is the most feared disease – more than cancer, stroke, heart disease or diabetes.[1]

19.    A growing trend in the supplement industry is single ingredient dietary supplement products claiming to improve memory loss. Sales of these products have exploded in recent years due in large part to media reports of "miracle" memory loss and brain enhancing supplements.

20.    Not surprisingly, this lucrative market has attracted a variety of hucksters seeking to "cash in" on America's fear of memory loss by hawking an array of products and services, many promising miraculous results.

21.    Ginkgo biloba fossils date back 250 million years, and the use of Ginkgo biloba leaf extract as a folk medicine dates back centuries to traditional Chinese medicine. Today, Ginkgo biloba leaf extract is marketed in the United States as a dietary supplement, thereby escaping the United States Food and Drug Administration's ("FDA") requirement for manufacturers to test the effectiveness of their products prior to their marketing and sale.

22.    On information and belief, Defendants' market research shows that the number one reason consumers use Ginkgo biloba is for brain health, specifically for

---

[1] Marist Poll, Alzheimer's Most Feed Disease (Nov. 15, 2012), *available at* http://maristpoll.marist.edu/1114-alzheimers-most-feared-disease/.

memory and mental focus.

23.    Defendants seek to take advantage of the public's desire for these "miracle" supplements by promising to elevate mental capacities.

24.    Defendants manufacture, market and sell:

      a.    Nature's Bounty Ginkgo Biloba 120 mg (100 Capsules)

      b.    Nature's Bounty Ginkgo Biloba 60 mg (200 Capsules)

      c.    Nature's Bounty Ginkgo Biloba 60 mg (60 Tablets)

      d.    Nature's Bounty Ginkgo Biloba 400 mg plus 60 mg Standardized Extract (120 Tablets)

      e.    Sundown Naturals Ginkgo Biloba 60 mg (200 Tablets)

      f.    Sundown Naturals Ginkgo Biloba 60 mg (120 Tablets)

      g.    Sundown Naturals Ginkgo Biloba 60 mg (100 Tablets)

25.    Defendants specifically target the elderly by claiming: "Ginkgo helps improve memory, especially occasional mild memory problems associated with aging." *See* Exs. A-G.

26.    Unfortunately, the promise of enhanced mental acuity and prevention of memory loss is nothing but a sham.

27.    Unbiased, randomized, double blind clinical human studies conclude that Ginkgo biloba supplements do not promote, improve, or support memory or cognitive function.

28.    Throughout the liability period, as defined below, Defendants have engaged in advertising and marketing campaigns that utilize claims of improved memory and cognitive ability, conveying the message to consumers the Ginkgo biloba Products will provide health benefits, irrespective of whether the claims are factually and scientifically accurate.

29.    As a result of these deceptive claims, Defendants sell hundreds of thousands of units of the Ginkgo biloba Products through stores such as Albertsons,

Safeway, CVS Pharmacy, Walgreens, Whole Foods, and many other retail and on-line stores.

**B.    Defendants' Advertising and Marketing of the Products**

30.    In the now ultra-competitive market for supplements, those who manufacture and sell such supplements, including Defendants, conduct extensive consumer research, upon which they base advertising claims they know will differentiate their products from others in the marketplace.

31.    Upon information and belief, Defendants have expert knowledge of the consumer market for supplements and have designed coordinated, uniform advertising and marketing for the Ginkgo biloba Products using a variety of deceptive claims.

32.    Since launching the Ginkgo biloba Products, Defendants have consistently conveyed the message to consumers throughout the United States, including California and New York, that the Ginkgo biloba Products provide cognitive health benefits, and/or memory benefits, and/or brain functioning support.

33.    Defendants advertise their Nature's Bounty Products will promote, improve or support memory and cognitive ability. Specifically:

   a.    Prior to 2012, the Nature's Bounty Products' labels contained the following representations:

      i.    "Promotes Healthy Brain Function & Circulation;"

      ii.    "Helps Support Mental Alertness;" and

      iii.    "Ginkgo helps improve memory, especially occasional mild memory problems associated with aging."

   b.    From 2012 to 2015, the Nature's Bounty Products' labels contained the following representations:

      i.    "Supports Healthy Brain Function & Circulation;"

      ii.    "Clinically Studied Dosage for Brain Function;" and

      iii.    "Ginkgo helps support memory, especially occasional mild memory problems associated with aging."

   c.   In 2016, Nature's Bounty Ginkgo Biloba 60 mg (200 Capsules) Products' labels were changed to state, "Supports Healthy Brain Function & Mental Alertness."

   d.   In 2016, the Nature's Bounty Ginkgo Biloba 120 mg (100 Capsules) Products' labels were changed to state, "Supports Healthy Brain Function & Circulation."

*See* Exs. A-D.

34.   Defendants advertise their Sundown Naturals Products similarly. Specifically:

   a.   As late as 2009, the Sundown Naturals Products' labels contained the following representations:

      i.    "Promotes Healthy Brain Function;"

      ii.    "Ginkgo helps improve memory, especially occasional mild memory problems associated with aging."

   b.   From 2010 to 2015, the Sundown Naturals Products' labels contained the following representations:

      i.    "Supports Healthy Brain Function;" and

      ii.    "Ginkgo helps support memory, especially occasional mild memory problems associated with aging."

   c.   In 2016, all of the Sundown Naturals Products' labels stated, "Supports Healthy Brain Function," while the Sundown Naturals Ginkgo Biloba 60 mg (100 Tablets) also stated "Helps support memory, especially occasional mild memory problems associated with aging."

*See* Exs. E-G.

35.     The label on the bottle for Nature's Bounty Ginkgo Biloba 120 mg (100 Capsules) lists the sole active ingredient as "Ginkgo Biloba Extract (Ginkgo biloba) (leaf) (Standardized to contain 24% Ginkgo Flavone Glycosides, 28mg)." *See* Ex. A.

36.     The label on the bottle for Nature's Bounty Ginkgo Biloba 60 mg (200 Capsules) lists the sole active ingredient as "Ginkgo Biloba Extract (Ginkgo biloba) (leaf) (Standardized to contain 24% Ginkgo Flavone Glycosides, 14.4mg)." *See* Ex. B.

37.     The label on the bottle for Nature's Bounty Ginkgo Biloba 60 mg (60 Tablets) lists the sole active ingredient as "Ginkgo Biloba Extract (Ginkgo biloba) (leaf) (Standardized to contain 24% Ginkgo Flavone Glycosides, 14.4mg)." *See* Ex. C.

38.     The label on the bottle for Nature's Bounty Ginkgo Biloba 400 mg plus 60mg Standardized Extract (120 Tablets) lists the active ingredients as "Ginkgo Biloba Extract (Ginkgo biloba) (leaf) (Standardized to contain 24% Ginkgo Flavone Glycosides, 14.4mg)" and "Ginkgo Biloba (Ginkgo Biloba)(leaf)." *See* Ex. D.

39.     The label on the bottle for Sundown Naturals Ginkgo Biloba 60 mg (200 Tablets) lists the sole active ingredient as "Ginkgo Biloba Extract (Ginkgo biloba) (leaf) (Standardized to contain 24% Ginkgo Flavone Glycosides, 14.4mg)." *See* Ex. E.

40.     The label on the bottle for Sundown Naturals Ginkgo Biloba 60 mg (120 Tablets) lists the sole active ingredient as "Ginkgo Biloba Extract (Ginkgo biloba) (leaf) (Standardized to contain 24% Ginkgo Flavone Glycosides, 14.4mg)." *See* Ex. F.

41.     The label on the bottle for Sundown Naturals Ginkgo Biloba 60 mg (100 Tablets) lists the sole active ingredient as "Ginkgo Biloba Extract (Ginkgo biloba) (leaf) (Standardized to contain 24% Ginkgo Flavone Glycosides, 14.4mg)."

*See* Ex. G.

42.    Plaintiffs and members of the Class have been, and will continue to be, deceived or misled by Defendants' deceptive advertising claims. Each Class member purchased and consumed the Ginkgo biloba Products during the liability period and in doing so, read and considered the advertising claims on the Ginkgo biloba Products' labels and based their decisions to purchase the Ginkgo biloba Products on the advertising claims. Defendants' advertising claims were a material factor, and in fact, the <u>only</u> factor in influencing Plaintiffs' decisions to purchase and use the Ginkgo biloba Products. Plaintiffs and the Class members would not have purchased the Ginkgo biloba Products had they known that they did not provide the improved memory and brain function support as advertised.

43.    Unfortunately for Plaintiffs and Class members, Defendants' advertising claims, in their entirety, are false and deceptive.

**C.    Defendants' Advertising Claims for the Ginkgo biloba Products are False and Deceptive**

44.    Despite Defendants' foregoing representations and warranties to the contrary, Ginkgo biloba does not promote, improve or support memory or mental acuity.

45.    Independent scientific studies confirm that the advertising claims that Defendants made on the Ginkgo biloba Products' labels, and that Plaintiffs and the members of the Class relied upon in making their purchases, were false and misleading. Despite knowledge of these studies, Defendants continued to make the advertising claims, misleading Plaintiffs and members of the Class into believing the Ginkgo biloba Products had an efficacy and would provide the benefits described in their advertising.

46.    Defendants knew or should have known that the Ginkgo biloba extract present in the Ginkgo biloba Products does not provide any of the warranted benefits

as represented by Defendants' Ginkgo biloba Products' labels. To the contrary, competent and reliable scientific evidence has repeatedly demonstrated Ginkgo biloba supplements fail to show any improvement in mental cognition.

47.    Three separate meta-studies on Gingko biloba published in 2002, 2007, and 2012 evaluated all known published credible human scientific studies.[2] The studies uniformly conclude Ginkgo biloba supplements have no positive effect on cognitive functions in healthy individuals.[3]

   a.    In 2002, PH Canter and E. Ernst published "Ginkgo biloba: a smart drug? A systematic review of controlled trials of the cognitive effects of ginkgo biloba extracts in healthy people" in the University of Exeter Psychopharmacology Bulletin.[4] The meta-study evaluates data in six computerized databases for placebo-controlled, double-blind trials of the effect of standardized Ginkgo biloba extracts on cognitive function in healthy subjects. The study concludes "[t]he use of Ginkgo biloba as a "smart" drug cannot be recommended on the basis of the evidence available to date, and there is a particular need for further long-term trials with healthy subjects."[5]

---

[2] A meta-analysis contrasts and combines results from different studies in an attempt to identify patterns among study results, sources of disagreement, and other relationships between the studies.

[3] K. R. Laws et al., UK, *Is Ginkgo biloba a cognitive enhancer in healthy individuals? A meta-analysis*, 27 Human Psychopharmacology 527, (2012), available at http://dx.doi.org/10.1002/hup.2259.

[4] PH Canter & E. Ernst, *Ginkgo biloba: a smart drug? A systematic review of controlled trials of the cognitive effects of ginkgo biloba extracts in healthy people*, 36 Psychopharmacol Bulletin 108, (2002), available at http://www.ncbi.nlm.nih.gov/pubmed/12473969.

[5] *Id.*

b.    In 2007, PH Canter and E. Ernst published an update to their 2002 study titled, "Ginkgo biloba is not a smart drug: an updated systematic review of randomized clinical trials testing the nootropic effects of G. biloba extracts in healthy people."[6] The 2007 meta-study reviews available research added to the then-existing data set from the previous 2002 meta-study. Canter and Ernst conclude; "[t]he collated evidence from 15 randomized clinical trials provides no convincing evidence that G. biloba extracts ingested either as a single dose or over a longer period has a positive effect on any aspect of cognitive performance in healthy people under the age of 60 years."[7]

c.    In 2012, K. Laws, H. Sweetnam and T. Kondel published a meta-study titled "*Is Ginkgo biloba a cognitive enhancer in healthy individuals? A meta-analysis*" in the journal of Human Psychopharmacology at the University of Hertfordshire, UK.[8] This meta-study, similar to the aforementioned meta-studies of 2002 and 2007, gathered data from all relevant credible studies on Ginkgo biloba's effect as a cognitive enhancer. Here, the authors emphasize, "[g]iven that G. biloba is marketed worldwide as a memory enhancer or touted to at least 'maintain

---

[6] PH Canter & E. Ernst, *Ginkgo biloba is not a smart drug: an updated systematic review of randomized clinical trials testing the nootropic effects of G. biloba extracts in healthy people*, 22 Human Psychopharmacology 265, (2007), available at http://dx.doi.org/10.1002/hup.843.
[7] *Id.* at 277.
[8] Laws, et al., *supra* note 5.

memory', it is crucial to establish the validity for such claims."[9] This meta-study concludes "[g]. biloba has no significant impact on memory, executive function or attention with all effect sizes nonsignificant and effectively at zero."[10] Further, "we found no evidence that G. biloba improves memory, executive or attention functioning in healthy individuals."[11]

48. Overwhelmingly, the consensus of reliable scientific studies concludes Ginkgo biloba supplements do nothing to enhance or support memory or cognitive abilities in healthy adults.

a. A 2002 study conducted by P. Solomon, PhD and published in the Journal of the American Medical Association titled "*Ginkgo for Memory Enhancement*," studied the effects of over-the-counter Ginkgo biloba products in 203 subjects in a six-week randomized, double-blind, placebo-controlled, parallel group trial.[12] Solomon and co-researchers conclude "[t]he results of this 6-week study indicate that ginkgo did not facilitate performance on standard neuropsychological tests of learning, memory, attention and concentration or naming and verbal fluency in elderly adults without cognitive impairment."[13] The authors found, "[t]he ginkgo group also did not differ from the control

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] P. R. Solomon et al., *Ginkgo for Memory Enhancement* 288 JAMA 835, (2002), available at
http://jama.jamanetwork.com/article.aspx?articleid=195207.
[13] *Id.*

group in terms of self-reported memory function or global rating by spouses, friends, and relatives. These data suggest that when taken following the manufacturer's instructions, ginkgo provides no measurable benefit in memory or related cognitive function to adults with healthy cogitative function."[14] Solomon notes, "[d]espite the manufacturer's claims of improved memory in healthy adults, we were unable to identify any well-controlled studies that document this claim."[15] Solomon further concludes "this study does not support the manufacture's claims of the benefits of ginkgo on learning and memory."[16]

b.   In a 2002 article on the Cleveland Clinic Center for Continuing Education Pharmacotherapy Update, titled "*Ginkgo Biloba and Memory*," the Department of Pharmacy observed, "[d]espite the lack of well-controlled studies to support the use of Ginkgo biloba leaf extract for prevention and treatment of memory impairment, ginkgo products continue to be heavily marketed and widely used."[17] The article concludes "[t]he use of ginkgo biloba leaf extract for memory impairments marketed and targeted at the healthy adult that experiences forgetfulness. Currently, the claims that Ginkgo biloba has beneficial effects on

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] A. Popa, Pharmacology Update, *Ginkgo Biloba and Memory*, available at http://www.clevelandclinicmeded.com/medicalpubs/pharmacy/sepoct02/ginkgo.htm (last visited Nov. 8, 2012).

learning and memory are not supported by the literature."[18]

c.    In 2009, the Journal of the American Medical Association published the largest study to date entitled "*Ginkgo biloba for preventing cognitive decline in older adults: a randomized trial*."[19] The 8 year study included 3069 participants aged 72-96 years. Researchers concluded that 240 mg of Ginkgo biloba extract did not result in less cognitive decline in older adults with normal cognition or with mild cognitive impairment than in the placebo control group.[20]

d.    In the 2009 study "*Ginkgo biloba for cognitive impairment and dementia*," researchers reviewed 36 trials, nine of which were six months long (2016 participants total).[21] In the more recent and more reliable trials, three out of four found no benefits for cognitive decline.[22] Researchers concluded that while Ginkgo biloba might be safe to ingest, ". . . evidence that [it] has predictable and clinically significant benefit for people with dementia or cognitive impairment is inconsistent and unreliable."[23]

e.    In 2013, the Support Care Cancer published "The use of Ginkgo biloba for the prevention of chemotherapy-related cognitive

---

[18] *Id.*

[19] B.E. Snitz et al, *Ginkgo biloba for preventing cognitive decline in older adults: a randomized trial*, 302 JAMA 2663 (2009).

[20] *Id.*

[21] Jacqueline Birks and John Grimley Evans*, Ginkgo biloba for cognitive impairment and dementia*, Cochrane Database Systematic Review, Jan. 21, 2009.

[22] *Id.*

[23] *Id.*

dysfunction in women receiving adjuvant treatment for breast cancer."[24] Researchers found that in 166 women, 120 mg a day for up to 12 months did not provide any evidence that Ginkgo biloba can help prevent cognitive changes from chemotherapy.[25]

f.    In 2014, the authors of "*Substances used and prevalence rates of pharmacological cognitive enhancement among healthy subjects*" studied 176 participants who ingested 120 mg daily of Ginkgo biloba over a six-month period.[26] The results indicated that there was no evidence that an average dose of Ginkgo biloba extract created any benefit in mild to moderate dementia.

49.    To date, although there are some studies that purportedly support the notion that ingestion of Ginkgo biloba can provide cognitive health benefits, those studies suffer myriad fatal methodological deficiencies, including utilizing scientifically unreliable sample sizes, not utilizing scientifically sound testing procedures, and suffering from publication bias, i.e., the funding, publication or sponsorship of the study was provided by a party who stood to benefit from a positive finding. Or, alternatively, the studies used a larger supplementation of Ginkgo biloba than that provided by Defendants' suggested, or recommended consumption.

50.    In contrast, Plaintiffs' allegations are based upon scientifically valid peer-reviewed studies, which have been published in independent, reputable scientific journals, and which conclusively demonstrate that the Ginkgo biloba

---

[24] Debra L. Barton et al., *The use of Ginkgo biloba for the prevention of chemotherapy-related cognitive dysfunction in women receiving adjuvant treatment for breast cancer*, 21 Support Care Cancer 1185 (2013).
[25] *Id.*
[26] AG Franke et al., *Substances used and prevalence rates of pharmacological cognitive enhancement among healthy subjects*, 264 Suppl 1, Eur. Arch Psychiatry Clin. Neurosci. 83-90 (2014).

Products do not provide the benefits advertised by Defendants and may even cause harm to consumers.

51.    In addition to the lack of positive cognitive benefits, Ginkgo biloba may have negative carcinogenic effects. The National Toxicology Program ("NTP") studied the effects of Ginkgo biloba on rats and mice in small and large doses. In the *NTP Technical Report on the Toxicology and Carcinogenesis Studies of Ginkgo Biloba Extract in F344/N Rats and B6C3F1/N Mice*, researchers concluded that Ginkgo biloba extract causes cancers of the thyroid gland in male and female rats and male mice and cancers of the liver in male and female mice.[27]

52.    As a result of the serious implications of the NTP study, and the lack of scientific evidence supporting safe use and positive effects of Ginkgo biloba, the Center for Science in the Public Interest addressed the director of the Food and Drug Administration ("FDA"), emphasizing that claims regarding Ginkgo biloba's supposed health benefits, including those related to memory and cognitive function, are false and should be stopped and imploring him to issue a directive that Ginkgo is no longer "Generally Recognized As Safe." *See* Ex. H.

53.    The widespread popularity of Ginkgo biloba is simply a testament to the power of marketing rather than to any measurable brain benefits.[28]

_____

[27] Nat'l Inst. Of Health, *Technical Report on the Toxicology and Carcinogenesis Studies of Ginkgo Biloba Extract in F344/N Rats and B6C3F1/N Mice*, NTP TR 578, Publication No. 13-5920, *available at* http://ntp.niehs.nih.gov/ntp/htdocs/lt_rpts/tr578_508.pdf.

[28] Kirk R. Daffner (ed.), Harvard Medical School, *Improving Memory – Understanding age-related memory loss*" (2012) ("Harvard Report"), at 46, *available at* http://www.health.harvard.edu/special_health_reports/improving-memory?utm_source=promo&utm_medium=email&utm_content=body1b&utm_campaign=PA111812&j=2979281 6&e=wolchansky@halunenlaw.com&l=16223912_HTML&u=347687378&mid=148797&jb=0 (last visited Nov. 19, 2012).

CLASS ACTION COMPLAINT
- 20 -

54.     Accordingly, Defendants' marketing is deceptive and misleading as the claims are specifically refuted by competent and reliable scientific evidence as set forth above.

55.     As a result, Plaintiffs and the Class members have been damaged by their purchases of the Ginkgo biloba Products and have been deceived into purchasing a product that they believed, based on Defendants' representations, provided benefits when, in fact, they did not.

56.     Defendants have reaped enormous profits from their false marketing and sale of the Ginkgo biloba Products.

**D.     The Class' Claims are Subject to Equitable Tolling**

57.     Plaintiff Petkevicius incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

58.     The statute of limitations applicable to Plaintiff Petkevicius's and the California Class's complaint should be tolled pursuant to the doctrine of equitable tolling.

59.     Equitable tolling is a judge-created doctrine that suspends a statute of limitations to ensure fairness to litigants and avoid forfeiture of claims. The doctrine also extends to unnamed class members in class actions because without it, "potential class members would be induced to file protective actions to preserve their claims, thus depriving class actions of their ability to secure efficiency and economy of litigation." *Hatfield v. Halifax*, 564 F.3d 1177, 1187 (9th Cir. 2009) (internal citations and quotations omitted).

60.     California's equitable tolling principles apply where there has been "(1) timely notice to the defendant in the filing of the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." *Hatfield,* 564 F.3d at 1185.

61.    Plaintiff Petkevicius filed the first lawsuit on behalf of herself and the California Class on November 3, 2014, alleging false advertising claims arising from Defendant's sale of Ginkgo Biloba.  On March 24, 2017, the Court dismissed the action for lack of subject matter jurisdiction, namely, for failure to meet the requisite amount in controversy pursuant to CAFA.  The first lawsuit, originally pursuing both a California and Multi-State Classes, alleged identical claims, arose from the same injury, and was based on the same facts as those alleged in the instant action. Thus, the first lawsuit sufficiently put Defendants on notice of the substance and nature of Plaintiff Petkevicius's claims.   Further, because fact discovery ended prior to dismissal, there is a lack of prejudice to Defendants in gathering evidence to defend against the instant action.  Lastly, Plaintiff acted in good faith and diligently pursued her claims by filing the instant lawsuit in under three months from the date of dismissal of the first action.

62.     Since the initial lawsuit was dismissed for lack of subject matter jurisdiction, Plaintiff Petkevicius and the California Class are not attempting to re-litigate an earlier adverse decision on the merits of any of their claims.

63.    THEREFORE, to the extent equitable tolling operates to toll claims by Plaintiff Petkevicius and the California Class against Defendants, the California Class statutory period should be adjusted accordingly.

## **CLASS ALLEGATIONS**

60.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek to represent the following classes:

A.    The "California Class," which consists of: All consumers within the State of California who purchased the Ginkgo biloba Products during the applicable liability period for their personal use, rather than for resale or distribution. Excluded from the California Class are Defendants' current or former officers, directors, and employees;

counsel for Plaintiffs and Defendants; and the judicial officer to whom this lawsuit is assigned.

B.    The "New York Class," which consists of: All consumers within the State of New York who purchased the Ginkgo biloba Products during the applicable liability period for their personal use, rather than for resale or distribution. Excluded from the New York Class are Defendants' current or former officers, directors, and employees; counsel for Plaintiffs and Defendants; and the judicial officer to whom this lawsuit is assigned.

(collectively the "Class").

61.    The requirements of Federal Rule of Civil Procedure 23 are satisfied because:

A.    <u>Numerosity</u>: The members of each class are so numerous that joinder of all members is impracticable. While the exact number of class members is presently unknown to Plaintiffs, based on Defendants' volume of sales, Plaintiffs estimate that each class numbers in the thousands.

B.    <u>Commonality</u>: There are questions of law and fact that are common to the class members and that predominate over individual questions. These include the following:

i.    Whether Defendants falsely advertise and misrepresent the benefits of the Ginkgo biloba Products;

ii.    Whether Defendants' mass media advertising and/or the packaging for the Ginkgo biloba Products is misleading and deceptive;

iii.    Whether Defendants' labeling and/or packaging for the Ginkgo biloba Products is misleading, false and/or illegal;

iv.    Whether Defendants represent to consumers that the Ginkgo biloba Products have characteristics, uses,

1    benefits or qualities that the Ginkgo biloba Products do
2    not have;

3    v.    Whether Defendants knew or should have known that the
4          Ginkgo biloba Products do not have the characteristics,
5          uses, benefits or qualities for which Defendants advertised
6          the Ginkgo biloba Products;

7    vi.   Whether Defendants represented that the Ginkgo biloba
8          Products are of a particular standard, quality, or grade,
9          when they are of another;

10   vii.  Whether Defendants advertised the Ginkgo biloba
11         Products with intent to sell them not as advertised;

12   viii. Whether Defendants engaged in unfair, unlawful and/or
13         fraudulent business practices in marketing and distributing
14         the Ginkgo biloba Products;

15   ix.   Whether Defendants engaged in false advertising with
16         respect to the Ginkgo biloba Products;

17   x.    The nature and extent of damages and other remedies to
18         which the wrongful conduct of Defendants entitles the
19         Class members;

20   xi.   Whether Defendants' representations, concealments and
21         non-disclosures concerning the Ginkgo biloba Products
22         violate the CLRA, FAL and/or the UCL;

23   xii.  Whether Defendants' representations, concealments and
24         non-disclosures concerning the Ginkgo biloba Products
25         violate the N.Y. Gen. Bus. Law §§ 349 & 3450;

26   xiii. Whether the Class is entitled to restitution; and

27   xiv.  Whether Plaintiffs and the Class are entitled to attorneys'

28

fees and expenses, and in what amount.

C.    Typicality: Plaintiffs' claims are typical of the claims of the class members because Plaintiffs suffered the same injury as the class members—*i.e.*, Plaintiffs purchased the Ginkgo biloba Products based on Defendants' misleading advertising claims.

D.    Adequacy: Plaintiffs will fairly and adequately represent and protect the interests of the members of each class. Plaintiffs do not have any interests that are adverse to those of the class members. Plaintiffs have retained competent counsel experienced in class action litigation and intend to prosecute this action vigorously.

E.    Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Since the damages suffered by individual class members are relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged, while an important public interest will be served by addressing the matter as a class action.

62.    If necessary, notice of this action may be affected to the proposed class through publication.

63.    Unless a Class is certified, Defendants will retain monies received as a result of its conduct that were taken from Plaintiffs and Class members.

## FIRST CAUSE OF ACTION
### VIOLATION OF UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, *et seq*).
### Unlawful Business Acts and Practices

64.    Plaintiff Petkevicius incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

65.    Plaintiff Petkevicius brings this claim individually and on behalf of the proposed California Class against Defendants.

66.    As alleged herein, Plaintiff Petkevicius has standing to pursue this claim as Plaintiff Petkevicius has suffered injury in fact and has lost money or property as a result of Defendants' actions. Specifically, Plaintiff Petkevicius purchased the Ginkgo biloba Products for her own personal use. In so doing, Plaintiff Petkevicius relied upon the false representations that the Ginkgo biloba Products would cause or assist in improved memory and brain function as referenced above. Plaintiff Petkevicius used the Ginkgo biloba Products as directed and did not receive any of the advertised benefits. Plaintiff Petkevicius would not have purchased the Ginkgo biloba Products had she known Defendants' advertising claims were false.

67.    The actions of Defendants, as alleged herein, constitute illegal and unlawful practices committed in violation of the Business & Professions Code §17200.

68.    Defendants have unlawfully marketed and advertised the Ginkgo biloba Products because Defendants: (1) violate sections 1770(a)(5), 1770(a)(7) and 1770(a)(9) of the CLRA, *Civil Code* § 1750, *et seq.*; (2) violate sections 17200 *et seq.* and 17500 *et seq.* of the Business & Professions Code; and (3) violate sections 111330 and 111445 of the California Health & Safety Code.

69.    Moreover, Defendants' manufacturing, marketing, advertising, packaging, labeling, distributing, and selling of the Ginkgo biloba Products violates California's Sherman Act, Cal. Health & Safety Code §109875, *et seq.* The Sherman Act defines a "person" as "any individual, firm, partnership, trust, corporation, limited liability company, company, estate, public or private institution, association,

organization, group, city, county, city and county, political subdivision of this state, other governmental agency within the state, and any representative, agent, or agency of any of the foregoing." *Cal. Health & Safety Code*, §109995. Defendants are corporations and, therefore, are "persons" within the meaning of the Sherman Act.

70.     In relevant part, a drug is misbranded if its labeling is false or misleading in any particular way. *Cal. Health & Safety Code* §§111330, 111445.

71.     Plaintiff Petkevicius and other California Class members were misled and, because the misrepresentations were uniform and material, believed that the Ginkgo biloba Products would provide cognitive benefits as advertised.

72.     There were reasonably available alternatives to further Defendants legitimate business interests, other than the conduct described herein.

73.     Plaintiff Petkevicius and the California Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

74.     THEREFORE, Plaintiff Petkevicius prays for the relief as set forth below.

## SECOND CAUSE OF ACTION
### VIOLATION OF UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, *et seq.*)
### Unfair Business Acts and Practices

75.     Plaintiff Petkevicius incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

76.     Plaintiff Petkevicius brings this claim individually and on behalf of the proposed California Class against Defendants.

77.     As alleged herein, Plaintiff Petkevicius has standing to pursue this claim as Plaintiff Petkevicius has suffered injury in fact and has lost money or property as a result of Defendants' actions. Specifically, Plaintiff Petkevicius

purchased the Ginkgo biloba Products for her own personal use. In so doing, Plaintiff Petkevicius relied upon the false representations that the Ginkgo biloba Products would cause or assist in improved memory and brain function as referenced above. Plaintiff Petkevicius used the Ginkgo biloba Products as directed and did not receive any of the advertised benefits. Plaintiff Petkevicius would not have purchased the Ginkgo biloba Products had she known Defendants' advertising claims were false.

78.    California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice."

79.    Defendants' acts, misrepresentations and practices as alleged herein constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200 *et seq.*, in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

80.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

81.    THEREFORE, Plaintiff Petkevicius prays for the relief as set forth below.

### THIRD CAUSE OF ACTION
### VIOLATION OF UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, *et seq.*)
### Fraudulent Business Acts and Practices

83.    Plaintiff Petkevicius incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

84.    Plaintiff Petkevicius brings this claim individually and on behalf of the proposed California Class against Defendants.

85.    As alleged herein, Plaintiff Petkevicius has standing to pursue this claim as Plaintiff Petkevicius has suffered injury in fact and has lost money or

property as a result of Defendants' actions. Specifically, Plaintiff Petkevicius purchased the Ginkgo biloba Products for her own personal use. In so doing, Plaintiff Petkevicius relied upon the false representations that the Ginkgo biloba Products would cause or assist in improved memory and brain function as referenced above. Plaintiff Petkevicius used the Ginkgo biloba Products as directed and did not receive any of the advertised benefits. Plaintiff Petkevicius would not have purchased the Ginkgo biloba Products had she known Defendants' advertising claims were false.

86.   California Business & Professions Code § 17200 prohibits any "fraudulent business act or practice."

87.   Defendants' claims, nondisclosures, and misleading statements with respect to the Ginkgo biloba Products, as more fully set forth above, were false, misleading, and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200.

88.   Defendants' conduct caused and continues to cause injury to Plaintiff Petkevicius and the other California Class members. Plaintiff Petkevicius has suffered injury in fact and has lost money as a result of Defendants' deceptive conduct.

89.   THEREFORE, Plaintiff Petkevicius prays for the relief as set forth below.

### FOURTH CAUSE OF ACTION
### FALSE AND MISLEADING ADVERTISING
### (CAL. BUS. & PROF. CODE § 17500, *et seq.*)

90.   Plaintiff Petkevicius incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

91.   Plaintiff Petkevicius brings this claim individually and on behalf of the proposed California Class against Defendants.

92.   As alleged herein, Plaintiff Petkevicius has standing to pursue this

claim as Plaintiff Petkevicius has suffered injury in fact and has lost money or property as a result of Defendants' actions. Specifically, Plaintiff Petkevicius purchased the Ginkgo biloba Products for her own personal use. In so doing, Plaintiff Petkevicius relied upon the false representations that the Ginkgo biloba Products would cause or assist in improved memory and brain function as referenced above. Plaintiff Petkevicius used the Ginkgo biloba Products as directed and did not receive any of the advertised benefits. Plaintiff Petkevicius would not have purchased the Ginkgo biloba Products had they known Defendants' advertising claims were false.

93.    Defendants violated Business & Professions Code § 17500 by publicly disseminating false, misleading, and unsubstantiated advertisements regarding the Ginkgo biloba Products.

94.    Defendants' false, misleading and unsubstantiated advertisements were disseminated to increase the sales of the Ginkgo biloba Products.

95.    Defendants knew or should have known their advertisements for the Ginkgo biloba Products were false and misleading.

96.    Plaintiff Petkevicius and the members of the California Class have suffered harm as a result of these violations of the FAL because they have incurred charges and/or paid monies for the Ginkgo biloba Products that they otherwise would not have incurred or paid.

97.    Defendants are aware, or by the exercise of reasonable care should have been aware, that the representations were untrue or misleading.

98.    Plaintiff Petkevicius and the members of the California Class have suffered injury in fact and have lost money as a result of Defendants' false representations and false advertising.

99.    Plaintiff Petkevicius and the members of the California Class seek an order awarding Plaintiff Petkevicius and other members of the California Class restitution of the money wrongfully acquired by Defendants by means of

responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations.

100.   THEREFORE, Plaintiff Petkevicius prays for the relief as set forth below.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA LEGAL REMEDIES ACT**
**(CAL. CIV. CODE § 1750, *et seq.*)**

101.   Plaintiff Petkevicius incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

102.   Plaintiff Petkevicius brings this claim individually and on behalf of the proposed California Class against Defendants.

103.   As alleged herein, Plaintiff Petkevicius have standing to pursue this claim as Plaintiff Petkevicius has suffered injury in fact and has lost money or property as a result of Defendants' actions. Specifically, Plaintiff Petkevicius purchased the Ginkgo biloba Products for her own personal use. In so doing, Plaintiff Petkevicius relied upon the material, false representations that the Ginkgo biloba Products would cause or assist in improved memory and brain functioning, as set forth above. Plaintiff Petkevicius used the Ginkgo biloba Products as directed and did not receive any of the advertised benefits. Plaintiff Petkevicius would not have purchased the Ginkgo biloba Products had she known Defendants' advertising claims were false.

104.   Plaintiff Petkevicius has concurrently filed the declaration of venue required by Civil Code §1780(d) with this complaint.

105.   Defendants have violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff Petkevicius and the California Class, which were intended to result in, and did result in, the sale of the Ginkgo biloba Products:

§1770(a) (5) Representing that [The Ginkgo biloba Products have] ... characteristics, ... uses [or] benefits ... which [they do] not have ... .

§1770(a) (7) Representing that [The Ginkgo biloba Products are] of a particular standard, quality or grade ... if [they are] of another.

§1770(a) (9) Advertising goods or services with intent not to sell them as advertised.

106.  On information and belief, Defendants' actions were willful, wanton, and fraudulent.

107.  On information and belief, officers, directors, or managing agents at Defendants authorized the use of the misleading statements about the Ginkgo biloba Products.

108.  CLRA SECTION 1782 NOTICE. On December 23, 2013, Plaintiff Petkevicius, through counsel, sent a CLRA demand letter to Defendants that provided notice of Defendants' violation of the CLRA and demanded Defendants correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein. The letter also stated that if Defendants refused to do so, Plaintiff Petkevicius would file a complaint seeking damages in accordance with the CLRA. Defendants failed to comply with the letter. For the foregoing reasons, pursuant to Civil Code section 1780(a)(3), Plaintiff Petkevicius, individually and on behalf of all other members of the California Class, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendants' acts and practices.

109.  In addition, the CLRA has enhanced penalties for acts perpetrated against senior citizens and disabled persons. If the Defendants' conduct is directed at a class of persons who are senior citizens and/or disabled, a $5,000.00 civil penalty may be awarded to "each class member." Civ. Code § 1780(b). A "disabled person" is someone who has a "physical or mental impairment which substantially limits one

or more major life activities." Civ. Code §1761(f), (g). Under California law, individuals suffering from Alzheimer's are "disabled." Defendants' conduct is clearly directed at senior citizens and the disabled (i.e., those with Alzheimer's), as Defendants represent and warrant that the Ginkgo biloba Products treat and/or prevent memory loss. Accordingly, the Court may award a civil penalty of up to $5,000 for each class member.

110.    Plaintiff Petkevicius engaged counsel to prosecute this action and is entitled to recover costs and reasonable attorney's fees according to proof at trial.

111.    THEREFORE, Plaintiff Petkevicius prays for the relief as set forth below.

## SIXTH CAUSE OF ACTION
## BREACH OF CALIFORNIA EXPRESS WARRANTY
## (CAL. COMM. CODE § 2313)

110.    Plaintiff Petkevicius incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

111.    Plaintiff Petkevicius brings this claim individually and on behalf of the proposed California Class against Defendants.

112.    Plaintiff Petkevicius and the California Class members formed a contract with Defendants at the time they purchased the Ginkgo biloba Products. As part of that contract, Defendants represented that the Ginkgo biloba Products would cause or assist in improved memory and brain functioning, as described above. These representations constitute express warranties and became part of the basis of the bargain between Plaintiff Petkevicius and the California Class members, on the one hand, and Defendants, on the other.

113.    Defendants made the above-described representations to induce Plaintiff Petkevicius and the California Class members to purchase the Ginkgo biloba Products, and Plaintiff Petkevicius and the California Class members relied

on the representations in purchasing the Ginkgo biloba Products.

114.   All conditions precedent to Defendants' liability under the above-referenced contract have been performed by Plaintiff Petkevicius and the other California Class members.

115.   Defendants breached their express warranties about the Ginkgo biloba Products because, as alleged above, the Ginkgo biloba Products do not cause or assist in improved memory or brain functioning. Consequently, Defendants breached California's warranty laws. Cal. Comm. Code section 2313.

116.   As a result of Defendants' breaches of express warranty, Plaintiff Petkevicius and the other members of the California Class were damaged in the amount of the purchase price they paid for the Ginkgo biloba Products, in amounts to be proven at trial.

117.   Within a reasonable time after they knew or should have known of such breach, Plaintiff Petkevicius, on behalf of herself and the other members of the California Class, placed Defendants on notice thereof.

118.   THEREFORE, Plaintiff Petkevicius prays for the relief as set forth below.

## SEVENTH CAUSE OF ACTION
## VIOLATION OF NEW YORK GENERAL BUSINESS LAW
## (N.Y. GEN. BUS. LAW § 349)

119.   Plaintiff Ripley incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

120.   Plaintiff Ripley brings this claim individually and on behalf of the proposed New York Class against Defendants.

121.   New York General Business Law Section 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

122. The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of New York General Business Law Section 349, and as such, Plaintiff Ripley and the New York Class members seek monetary damages.

123. There is no adequate remedy at law.

124. Defendants misleadingly, inaccurately and deceptively market the Ginkgo biloba Products to consumers.

125. Defendants' improper consumer-oriented conduct—including labeling and advertising that the Ginkgo biloba Products would cause or assist in improved memory and brain functioning —is misleading in a material way in that it, *inter alia*, induced Plaintiff Ripley and the New York Class to purchase and/or pay a premium for Defendants' Ginkgo biloba Products and to use Ginkgo biloba Products when they otherwise would not have.

126. Defendants made its illegal, untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

127. Plaintiff Ripley and the New York Class have been injured inasmuch as they purchased and/or paid a premium for Ginkgo biloba Products that were contrary to Defendants' representations. Accordingly, Plaintiff Ripley and the New York Class members received less than what they bargained and/or paid for.

128. Defendants' advertising and Ginkgo biloba Products' packaging and labeling induced the Plaintiff Ripley and the New York Class members to buy Defendants' Ginkgo biloba Products and/or to pay a premium price for them.

129. Defendants' deceptive, illegal, and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff Ripley and the New York Class have been damaged thereby.

130. As a result of Defendants' recurring, unlawful deceptive acts and

practices, Plaintiff Ripley and the New York Class are entitled to monetary, compensatory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

131.    THEREFORE, Plaintiff Ripley prays for the relief as set forth below.

## EIGHTH CAUSE OF ACTION
## VIOLATION OF NEW YORK GENERAL BUSINESS LAW
## (N.Y. GEN. BUS. LAW § 350)

132.    Plaintiff Ripley incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

133.    Plaintiff Ripley brings this claim individually and on behalf of the proposed New York Class against Defendants.

134.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

135.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

136.    Defendants' labeling and advertisements contain untrue, illegal, and materially misleading statements concerning Defendants' Ginkgo biloba Products

inasmuch as they misrepresent that the Ginkgo biloba Products would cause or assist in improved memory and brain functioning.

137.    Plaintiff Ripley and the New York Class have been injured inasmuch as they relied upon the labeling, packaging and advertising and purchased and/or paid a premium for Ginkgo biloba Products that—contrary to Defendants' representations— do not cause or assist in improved memory and brain functioning. Accordingly, Plaintiff Ripley and the New York Class received less than what they bargained and/or paid for.

138.    Defendants' advertising, packaging and labeling induced Plaintiff Ripley and the New York Class to buy Defendants' Ginkgo biloba Products.

139.    Defendants made untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

140.    Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

141.    Defendants made the material misrepresentations described in this Complaint in Defendants' advertising, and on the Ginkgo biloba Products' packaging and labeling.

142.    Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Ginkgo biloba Products were and continue to be exposed to Defendants' material misrepresentations.

143.    As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff Ripley and the New York Class members are entitled to monetary, compensatory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

144.    THEREFORE, Plaintiff Ripley prays for the relief as set forth below.

# NINTH CAUSE OF ACTION
## BREACH OF NEW YORK EXPRESS WARRANTY
### (N.Y. U.C.C. LAW § 2-313)

145.   Plaintiff Ripley incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

146.   Plaintiff Ripley brings this claim individually and on behalf of the proposed New York Class against Defendants.

147.   Plaintiff Ripley and the New York Class members formed a contract with Defendants at the time they purchased the Ginkgo biloba Products. As part of that contract, Defendants represented that the Ginkgo biloba Products would cause or assist in improved memory and brain functioning, as described above. These representations constitute express warranties and became part of the basis of the bargain between Plaintiff Ripley and the New York Class members, on the one hand, and Defendants, on the other.

148.   Defendants made the above-described representations to induce Plaintiff Ripley and the New York Class members to purchase the Ginkgo biloba Products, and Plaintiff Ripley and the New York Class members relied on the representations in purchasing the Ginkgo biloba Products.

149.   All conditions precedent to Defendants' liability under the above-referenced contract have been performed by Plaintiff Ripley and the other New York Class members.

150.   Defendants breached their express warranties about the Ginkgo biloba Products because, as alleged above, the Ginkgo biloba Products would not cause or assist in improved memory or brain functioning. Consequently, Defendants breached New York's warranty laws. U.C.C. Law § 2-313.

151.   As a result of Defendants' breaches of express warranty, Plaintiff Ripley and the other members of the New York Class were damaged in the amount

of the purchase price and/or premium they paid for the Ginkgo biloba Products, in amounts to be proven at trial.

152.   Within a reasonable time after they knew or should have known of such breach, Plaintiff Ripley, on behalf of himself and the other members of the New York Class, placed Defendants on notice thereof.

153.   THEREFORE, Plaintiff Ripley prays for the relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants as follows:

A.   For an order requiring Defendants to disgorge and make restitution of all monies Defendants acquired by means of the unlawful practices set forth above;

B.   For an order declaring Defendants financially responsible for notifying the Class members of the pendency of this suit;

C.   For compensatory damages according to proof;

D.   For punitive damages according to proof;

E.   For reasonable attorneys' fees and costs of suit;

F.   For pre-judgment interest; and

G.   For such other relief as the Court deems proper.

/ / /

/ / /

/ / /

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all claims so triable.


Date:  June 8, 2017                    Respectfully submitted,

**CARLSON LYNCH SWEET**
**KILPELA & CARPENTER, LLP**


/s/    Todd D. Carpenter

_____

Todd D Carpenter (CA 234464)
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone: 619-756-6994
Facsimile: 619-756-6991
tcarpetner@carlsonlynch.com

**MILSTEIN ADELMAN LLP**
Gillian L. Wade, (CA 299124)
Allison R. Willett, (CA 238430)
2800 Donald Douglas Loop North
Santa Monica, CA 90405
Telephone: 888-835-8055
Facsimile: 310-396-9635
gwade@milsteinadelman.com
awillett@milsteinadelman.com

**HALUNEN & ASSOCIATES**
Melissa Wolchansky
   (to be admitted *pro hac vice*)
Christopher J. Moreland
   (to be admitted *pro hac vice*)
Charles D. Moore
   (to be admitted *pro hac vice*)
1650 IDS Center
80 S 8th Street
Minneapolis, MN 55402

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Telephone: 612-605-4098
Facsimile: 612-605-4099
wolchansky@halunenlaw.com
moreland@halunenlaw.com
moore@halunenlaw.com

**PATTERSON LAW GROUP**
James R. Patterson (CA 211102)
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone: 619-756-6990
Facsimile: 619-756-6991
jim@pattersonlawgroup.com

***ATTORNEYS FOR PLAINTIFFS***